UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6059 CAS (FMOx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | SUBLIME, ET AL. V. SUBLIME REMEMBERED, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers:) PLAINTIFF'S APPLICATION FOR AN ORDER FINDING DEFENDANT IN CONTEMPT (Docket #122, filed March 8, 2013)

## I.     INTRODUCTION AND BACKGROUND

Plaintiffs Sublime and Floyd Gaugh IV filed this case in this Court on September 22, 2006. Sublime is a well-known popular music group, and Floyd Gaugh IV is a former member of Sublime. Plaintiffs brought this case seeking to enforce intellectual property rights related to Sublime and its music. Defendant Mike Houlihan is a musician, and a former member of the Sublime tribute band Sublime Remembered; defendant Tawnee Houlihan is Mike Houlihan's wife and former manager.

This case was eventually settled in July 2010, when defendants agreed to permanently cease and desist selling, offering for sale, or promoting goods or services related to Sublime or a Sublime cover band. The Court issued a permanent injunction on July 19, 2010, which sets out several terms enforcing the parties' settlement agreement ("the injunction"). Dkt. #117.

Plaintiffs now claim that in February 2013, they discovered that Mike Houlihan ("defendant") was acting in violation of the injunction. On March 8, 2013, plaintiffs filed an application requesting that the Court issue an order to show cause regarding why defendant should not be found in contempt of court for violating the injunction. On April 15, 2013, the Court issued an order to show cause, requesting that defendant explain why he should not be found in contempt due to his alleged violations of the following four terms of the injunction:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6059 CAS (FMOx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | SUBLIME, ET AL. V. SUBLIME REMEMBERED, ET AL. | | |

    A.    Cease and desist selling, offering for sale, advertising and promoting goods and services related to Sublime, Bradley Nowell, Floyd "Bud" Gaugh IV or Eric Wilson, their music or creative endeavors, specifically including, but without limitation, any and all activities related to a Sublime tribute band or Sublime cover band.

    B.    Refrain from performing in public or in private for more than ten people music compositions written in whole or in part by Sublime . . . or contributing to, encouraging or authorizing the same.

    H.    Take down all existing, and refrain from creating any new websites related to any musical group comprised of one or more of the Houlihan Parties that has performed the music of Sublime, Bradley Nowell, Floyd "Bud" Gaugh IV or Eric Wilson.

    I.    Take down or cause to be taken down all videos posted . . . on the Internet and refrain [from] posting any new videos on YouTube.com, VidiLife.com or any other website that (a) feature performances of any of the Defendants performing music compositions written in whole or in part by Sublime [or its members] or (b) reference or mention, Q-Ball, Sublime Remembered, The LBC or any other Sublime tribute band or Sublime cover band comprised in whole or in part of any Houlihan Party.

Specifically, plaintiffs allege that defendant violated these terms by performing the music of Sublime at several concert venues, at times after the injunction had issued, with his band Long Beach Rehab. Plaintiffs learned of these performances through videos posted on the website youtube.com. Additionally, plaintiffs allege that defendant violated the injunction by maintaining a website related to a music group that has performed the music of Sublime, and by failing to take down videos posted on the Internet depicting defendant performing the music of Sublime. Finally, plaintiffs allege that in February 2013, defendant used the names "Sublime" and "Bradley Nowell" to promote a concert in Malibu, California.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6059 CAS (FMOx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | SUBLIME, ET AL. V. SUBLIME REMEMBERED, ET AL. | | |

## II.  LEGAL STANDARD

"Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply."  In re Dual-Deck Video Cassette Recorder Antitrust Litigation, 10 F.3d 693, 695 (9th Cir. 1993).  To find a party in civil contempt for violating a court order, the moving party must establish: "(1) that [defendant] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order."  Id.  The defendant's conduct "need not be willful" to violate a consent judgment.  Id.  Additionally, the moving party must carry its burden of establishing a violation of the order by clear and convincing evidence; a preponderance of the evidence is insufficient.  Id.

## III.  DISCUSSION

Plaintiffs claim that the injunction was violated in four distinct ways, and the Court considers each in turn.

### A.  Promotion and Marketing

Plaintiffs claim that defendant impermissibly used the names "Sublime" and "Bradley Nowell" to promote a concert at the Malibu Inn in February 2013 ("the February concert").  A promotional flyer for the concert contains the phrase "paying tribute to Bradley," which is a reference to Sublime's lead singer Bradley Nowell, and listed the name "Long Beach Rehab" alongside the band "Sublime LBC."  Dkt. #122 Ex. B.  Plaintiffs' counsel learned of the performance before it occurred, however, and took steps to ensure that the performance did not took place.

Defendant explains that Matt Myers ("Myers"), who is a former member of Long Beach Rehab and also a member of the band Sublime LBC Tribute, handled the marketing and promotion of the Malibu Inn concert on behalf of defendant.  Dkt. #132, Third Houlihan Decl. ¶ 10.  According to defendant, in the months prior to the February concert, Myers had been living with defendant and promoting the band Long Beach Rehab.  Dkt. #130, Second Houlihan Declaration ¶¶ 5 – 6.  At the same time, Myers was promoting and performing with the band Sublime LBC, and began booking Long Beach Rehab and Sublime LBC at the same shows.  Dkt. #130, Second Houlihan Declaration ¶

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6059 CAS (FMOx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | SUBLIME, ET AL. V. SUBLIME REMEMBERED, ET AL. | | |

8.  Following this practice, Myers booked the February show featuring both bands. Dkt. #130, Second Houlihan Declaration ¶ 9.

Defendant explains that he did not believe Myers' activities came within the scope of the injunction. Dkt. #130, Second Houlihan Decl. ¶ 10. Defendant believed it was acceptable for his band Long Beach Rehab to perform at a concert that also featured a Sublime tribute band such as Sublime LBC as long as defendant did not perform with the tribute band. Id.

The Court finds that defendant did not violate the injunction in connection with the promotion and booking of the February concert because the injunction did not squarely prohibit defendant's conduct. "To ensure fair notice to the defendant, the decree underlying contempt must be sufficiently clear to allow the party to whom it is addressed to ascertain precisely what it can and cannot do." Chao v. Gotham Registry, Inc., 514 F.3d 280, 292 (2d. Cir. 2008). "[A] person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." In re Dual Deck Video Cassette Recorder Antitrust Litigation, 10 F.3d at 695. ("The proper measure of clarity . . . is not whether the decree is clear in some general sense, but whether it unambiguously proscribes the challenged conduct."). Consequently, as long as defendant had a good faith, reasonable belief that his conduct did not violate the injunction, he should not be held in contempt.

The portion of the injunction purportedly violated during the promotion and booking of the February concert states that defendant must "[c]ease and desist . . . any and all activities related to a Sublime tribute band or Sublime cover band." Given the broad scope of this injunction, it is reasonable to believe that activities with only a tenuous relationship to a Sublime tribute band do not come within the its scope. For example, it appears that attending a Sublime tribute band concert as an audience member is not barred by the injunction, nor is listening to recordings by such a band, even though both activities are, in some remote sense, "activities related to a Sublime tribute band." It was therefore reasonable for defendant to believe that the injunction did not prevent him from performing at the same concert as a Sublime tribute band, as long as he did not perform as a member of that band or promote that band's performance. This interpretation is reasonable, in part, because the injunction focuses on defendant's participation in a Sublime tribute band or his performance of Sublime's music, and does

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6059 CAS (FMOx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | SUBLIME, ET AL. V. SUBLIME REMEMBERED, ET AL. | | |

not explicitly concern itself with defendant being in physical proximity to performances of Sublime's music or a Sublime tribute band.

Therefore, the Court finds that defendant should not be held in contempt due to his involvement with the February concert, because he acted on the basis of a good faith, reasonable belief that his conduct did not violate the injunction.

### B. Performance of Sublime's Music

Plaintiffs claim that defendant has performed Sublime's music several times since the injunction was entered. Plaintiffs' evidence consists of videos posted on youtube.com, which purportedly show defendant performing the songs "Ball and Chain," "Let's Go Get Stoned," "April 29 1992," "Santeria," and "Pawn Shop." The performance of "Ball and Chain" purportedly occurred in Jacinto, California on June 12, 2011; the performance of "Let's Go Get Stoned" and "Santeria" purportedly occurred in Seattle, Washington in February 2011; the performance of "April 29 1992" purportedly occurred in Enumclaw, Washington on January 8, 2013; and the performance of "Pawn Shop" purportedly occurred in Sacramento, California on May 31, 2013.

Defendant does not deny that the videos referenced by plaintiffs depicts him performing "Ball and Chain," but argues that the performance occurred in 2009, prior to the issuance of the injunction. Additionally, defendant claims that the alleged performances of "April 29 1992" and "Let's Go Get Stoned" did not occur. Third Houlihan Declaration ¶¶ 26 – 27. Regarding the performance of "Pawn Shop," defendant admits that the performance depicted in the video took place, but contends that he was actually performing a song entitled "War Deh Round a John Shop." Finally, defendant does not dispute that he participated in the performance of "Santeria" depicted in plaintiffs' submissions.

Regarding the performances of songs other than "Pawn Shop" and "Santeria," the Court finds that plaintiffs have not met their burden of proving a violation of the injunction through clear and convincing evidence. In re Dual-Deck Video Cassette Recorder Antitrust Litigation, 10 F.3d at 695. Plaintiffs' evidence consists solely of videos posted on youtube.com. In order to admit a video posted on youtube.com under the Federal Rules of Evidence, the proponent of the video "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6059 CAS (FMOx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | SUBLIME, ET AL. V. SUBLIME REMEMBERED, ET AL. | | |

Evid. 901, Orr v. Bank of America, 285 F.3d 764, 774 (9th Cir. 2002) ("Authentication is a condition precedent to admissibility . . ."). Therefore, to admit the youtube.com videos, plaintiffs must introduce evidence sufficient to support a finding that these videos depict performances that occurred at the times and places claimed by plaintiffs.

     Plaintiffs have failed to offer any evidence authenticating the youtube.com videos purportedly depicting post-injunction performances of "Ball and Chain," "Let's Go Get Stoned," and "April 29 1992." The videos clearly depict defendant performing with a band, but there is no evidence regarding when or where the videos were created. While statements posted on youtube.com by the users who uploaded the videos claim that the performances occurred at particular times and places, these statements are inadmissible hearsay if introduced to authenticate the videos. United States v. Jackson, 208 F.3d 633, 637 (7th Cir. 2000). Moreover, plaintiffs have not identified the users who uploaded the videos and obtained testimony from these individuals, and without such evidence, the Court cannot make a finding that the youtube.com videos actually depict post-injunction performances. Accordingly, there is no evidence that defendant has performed these three works by Sublime at a time after the injunction.

     Defendant has admitted that the other two performances actually occurred, and these admissions are sufficient to authenticate the videos. See 31 C. Wright & V. Gold, Federal Practice and Procedure § 7105 at 39 (Updated April 2013) (evidence may be authenticated through a judicial admission); see also Orr, 285 F.3d at 777 n.20. Accordingly, the Court must determine whether these performances violated the terms of the injunction. First, regarding the alleged performance of "Pawn Shop" in Sacramento, California, the Court finds that there is insufficient evidence to determine which work defendant was performing. No lyrics are sung in the video of defendant's performance, and based on the instrumental performance alone, it is not clear whether defendant was performing the song "Pawn Shop" or the song "War Deh Round a John Shop." While the comments posted on the youtube.com video state that the song performed is "Pawn Shop," as mentioned above, these comments are inadmissible hearsay. The youtube.com video relied upon by plaintiffs therefore does not demonstrate a violation of the injunction by clear and convincing evidence.

     Regarding "Santeria," however, the Court finds that defendant has admitted to performing a work of Sublime in violation of the injunction. Defendant contends that at the outset of the concert depicted in the video he did not know that Sublime's music

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6059 CAS (FMOx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | SUBLIME, ET AL. V. SUBLIME REMEMBERED, ET AL. | | |

would be performed, but this fact does not excuse defendant from his duty to refrain from performing Sublime's music. The Court therefore concludes that defendant has violated the injunction by performing the song "Santeria" subsequent to the issuance of the injunction.

### C. Maintaining a Website

The parties agree that defendant maintains a website promoting the band Long Beach Rehab on facebook. There is, however, no evidence that this band performs the music of Sublime, or has performed the music of Sublime. While defendant has admitted to performing the song "Santeria" since the injunction issued, there is no evidence that this performance involved the band Long Beach Rehab.

Additionally, plaintiffs contend that defendant maintains a page on facebook.com for the band Sublime LBC, which has purportedly performed the music of Sublime. There appears to be no evidence that defendant created this website, nor is there any evidence that the site existed at the time the injunction was entered. Consequently, the existence of a page on facebook.com for the band Sublime LBC does not demonstrate a violation of the injunction.

### D. Removing Online Videos

Finally, plaintiffs identified several videos posted on youtube.com and facebook.com that purportedly depict defendant performing the music of Sublime. Plaintiffs contend that the injunction requires defendant to take steps to remove these videos from the Internet, even if defendant was not the one who posted the videos originally. In response, defendant admits that there are videos on youtube.com and other websites depicting him performing Sublime's music, but argues that the injunction does not require him to take down all of these videos. According to defendant, his only duty under the injunction is to remove videos that he posted or over which he has control.

The language setting out defendant's duty to remove online videos states that defendant must "[t]ake down or cause to be taken down all videos posted on Youtube.com, Vidilife.com, or elsewhere on the Internet" that depict defendant performing Sublime's music. The use of the term "posted" in this language is ambiguous. The term could mean "posted by defendant or someone acting on his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6059 CAS (FMOx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | SUBLIME, ET AL. V. SUBLIME REMEMBERED, ET AL. | | |

behalf," but it could also mean "posted by any person." Since neither party has submitted any evidence tending to support either of these interpretations, the Court must resolve this ambiguity in defendant's favor. Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 16 (1st Cir. 1991) ("[A]ny ambiguities or uncertainties in . . . a court order must be read in a light favorable to the person charged with contempt."). Moreover, defendant's interpretation is more natural than plaintiffs', because defendant can only possess the authority and capability to "[t]ake down or cause to be taken down" videos that he has posted. Plaintiffs' proposed interpretation therefore leads to the absurd result that defendant must execute an impossible task to comply with the injunction.

The Court therefore interprets section 1.I of the injunction to only apply to videos posted by defendant or anyone acting on his behalf. Since there is no contention that defendant has failed to take down online videos that he posted, defendant has not violated this provision of the injunction.

  **E.**   **Remedies**

The remaining issue is what remedy should be ordered due to the violation of the injunction identified above, namely the post-injunction performance of "Santeria." "Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986). Coercive fines, or any portion thereof, are payable to the Court rather than to the opposing party. Id. When imposing a coercive civil contempt sanction, a court should consider: (1) the character and magnitude of the harm from continued noncompliance; (2) the probable effectiveness of any sanctions in achieving future compliance; (3) the amount of defendant's financial resources; and (4) the willfulness of the violating party. See U.S. v. United Mine Workers of America, 330 U.S. 258, 303–304 (1946); General Signal Corp, 787 F.2d at 1380. The amount of a compensatory fine, on the other hand, should be based upon the movant's actual losses suffered as a result of the violation. Id.; see also Shuffler v. Heritage Bank, 720 F.2d 1141, 1148 (9th Cir. 1983).

Here, the Court finds that coercive fines, payable to the Court, should be imposed to insure prospective compliance with the injunction. The fines should be small, however, in light of the fact that (1) only a single violation of the injunction has been

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6059 CAS (FMOx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | SUBLIME, ET AL. V. SUBLIME REMEMBERED, ET AL. | | |

demonstrated, (2) that violation occurred contrary to defendant's expectations, and (3) there is no evidence that defendant has profited substantially or harmed plaintiffs substantially due to the violation of the injunction. Accordingly, defendant is ordered to pay a coercive fine of five hundred dollars due to his violation of the injunction.

Additionally, plaintiffs have stated their intent to pursue a stipulated judgment against defendant in the amount of $68,030.15. Dkt. #141, Lemkin Decl. ¶ 11. Plaintiffs claim that they are entitled to this relief under section 5 their settlement agreement with defendant, which provides:

> In the event a court of competent jurisdiction determines that Houlihan Parties or any of them violate the Amended Permanent Injunction, in addition to any and all remedies and relief afforded them by law, [plaintiffs] may file the Stipulated Judgment attached hereto as Exhibit B in the amount of the Judgment and Costs ($68,030.15), plus accrued interest at the maximum legal rate from June 4, 2009, and immediately execute on and enforce said Stipulated Judgment by any procedures allowable by law.

Settlement Agreement, § 5.

After considering the parties' settlement agreement, the Court finds that the violation of the injunction in this case should not result in plaintiffs' being permitted to file the stipulated judgment referenced in the parties' settlement agreement. "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity," and "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible." Cal. Civ. Code §§ 1638 – 1639. Additionally, "[a] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." Id. § 1643.

Here, to determine whether plaintiffs may avail themselves of the remedy set out in section 5 of the settlement agreement, the Court must consider whether its findings above amount to a conclusion that defendant has "violate[d]" the injunction within the meaning

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6059 CAS (FMOx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | SUBLIME, ET AL. V. SUBLIME REMEMBERED, ET AL. | | |

of the agreement. To resolve this issue, the Court must consider whether any violation of the injunction permits plaintiffs to pursue the stipulated judgment, or whether plaintiffs may only pursue the stipulated judgment if defendant has committed a material violation of the injunction.

The most reasonable interpretation of the settlement agreement is that only a material violation suffices. First, the Court notes that the plain language of the agreement does not resolve this question. The agreement uses the term "violate," but contains no language explaining how broadly or narrowly this term should be construed. While the plain language therefore does not specify what sort of violation is necessary to trigger the remedy set out in section 5 of the parties' settlement agreement, the circumstances under which the parties executed the contract strongly suggest that only a material violation suffices. The parties executed their settlement agreement after plaintiffs secured a judgment against defendant in the amount of $64,900 and an order to tax costs against defendant in the amount of $3,130.15. Dkt. # 99, 102. In the parties' settlement agreement, plaintiffs agreed to acknowledge satisfaction of this judgment in exchange for defendant's agreement to comply with the terms of the injunction. Dkt. #141, Lemkin Decl. ¶ 11; Dkt. #118 (satisfaction of judgment). Accordingly, the essence of the parties' bargain is that plaintiffs would not collect their judgment as long as defendant would abide by the terms of the injunction.

Construed in this context, section 5 of the agreement is best interpreted as an embodiment of the principle that "[w]hen a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract." Brown v. Grimes, 192 Cal. App. 4th 265, 277 (2011) (citing 1 Witkin, Summary of Cal. Law, Contracts §§ 813, 814 p. 906 (10th ed. 2005)). This interpretation is appropriate because section 5 of the agreement excuses plaintiffs from upholding their end of the settlement agreement if defendant has breached his obligations under the agreement. Because a material breach is necessary under California law to excuse performance, here too, the best interpretation of the parties' settlement agreement is that only a material violation of the injunction permits plaintiffs to deny defendant the benefit of the settlement agreement and pursue the stipulated judgment.

Consequently, the Court finds that plaintiffs may file the stipulated judgment referenced in section 5 of the parties' settlement agreement only in the event that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-6059 CAS (FMOx) | Date | July 22, 2013 |
|---|---|---|---|
| Title | SUBLIME, ET AL. V. SUBLIME REMEMBERED, ET AL. | | |

defendant has engaged in a material violation of the injunction. Here, no such finding has been made. "Whether a partial breach of a contract is material depends on the importance or seriousness thereof and the probability of the injured party getting substantial performance." Brown, 192 Cal. App. 4th at 278. As discussed above, the violation of the injunction found by the Court did not cause substantial harm to plaintiffs, and therefore was not a material violation of the injunction.

Accordingly, the Court finds that plaintiffs are not entitled to file the stipulated judgment referenced in section 5 of the parties' settlement agreement. If, however, additional violations of the injunction occur, plaintiffs may be entitled to avail themselves of that remedy if all of defendant's conduct, in the totality of the circumstances, amounts to a material violation of the injunction.

### IV. CONCLUSION

In accordance with the foregoing, the Court hereby GRANTS IN PART and DENIES IN PART plaintiffs' request to find defendant in contempt. Additionally, the Court hereby ORDERS defendant to pay the sum of five hundred dollars ($500) to the clerk of court by **August 26, 2013**.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
|  | Initials of Preparer | | CMJ |