UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:06-cv-06059-CAS (CWx) | Date | March 9, 2017 |
|---|---|---|---|
| Title | SUBLIME ET AL. V. SUBLIME REMEMBERED ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - PLAINTIFFS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND TO FILE A STIPULATED JUDGMENT (Filed August 4, 2016, Dkt. 151)

COURT'S ORDER TO SHOW CAUSE WHY MIKE HOULIHAN SHOULD NOT BE HELD IN CONTEMPT (Issued October 18, 2016, Dkt. 167)

## I. INTRODUCTION & PROCEDURAL HISTORY

Over a decade ago, on September 22, 2006, Sublime and Floyd Gaugh filed this action against Mike Houlihan (professionally known as "Q-Ball"), Tawnee Houlihan, and a Sublime tribute band called Sublime Remembered.[1]

On July 1, 2010, the parties reached a confidential settlement agreement.[2] Pursuant to the parties' joint stipulation and settlement agreement, the Court issued a permanent injunction prohibiting Mike Houlihan, Tawnee Houlihan, and Sublime Remembered "immediately and forever" from:

---

[1] The above-captioned application and order relate only to Mike Houlihan, not Tawnee Houlihan. For purposes of this order, the Court refers to Mike Houlihan as "Houlihan."

[2] At the time of the settlement agreement, Houlihan was pro se, but had previously be represented by counsel in this litigation. Houlihan is presently proceeding pro se.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:06-cv-06059-CAS (CWx) | Date | March 9, 2017 |
|---|---|---|---|
| Title | SUBLIME ET AL. V. SUBLIME REMEMBERED ET AL. | | |

> selling, offering for sale, advertising and promoting goods and services related to Sublime . . . specifically including, but without limitation, any and all activities related to a Sublime tribute band or Sublime cover band; . . .
>
> performing in public or in private for more than ten people music compositions written in whole or in part by Sublime, Bradley Nowell, Floyd 'Bud' Gaugh IV or Eric Wilson [the "Nowell, Gaugh, or Wilson"], or contributing to, encouraging or authorizing the same; . . .
>
> managing, acting as a talent agent for, acting as a booking agent for, promoting, marketing, advertising, consulting, hiring or booking any music group or artist that performs music compositions written in whole or in part by Sublime [, Nowell, Gaugh, or Wilson]; . . .
>
> [and] authoring, publishing and disseminating written or oral statements to the public that mention, concern or relate to Sublime [, Nowell, Gaugh, or Wilson] or contributing to, encouraging or authorizing the same.

Dkt. 117 ("the Injunction").

On March 8, 2013, plaintiffs filed an application requesting that the Court issue an order to show cause regarding why Houlihan should not be found in contempt for violating the Injunction. Dkt. 122. On April 12, 2013, the Court issued an order to show cause why defendant should not be found in contempt. Dkt. 131. On July 22, 2013, the Court found Houlihan in contempt of the Injunction and ordered him to pay $500. Dkt. 149 ("the Prior Contempt Finding"). In their March 8, 2013 application, plaintiffs also claimed they were entitled to file a stipulated judgment pursuant to their settlement agreement with defendants, which provides:

> In the event a court of competent jurisdiction determines that Houlihan Parties or any of them violate the Amended Permanent Injunction, in addition to any and all remedies and relief afforded them by law, [plaintiffs] may file the Stipulated Judgment attached hereto as Exhibit B in the amount of the Judgment and Costs ($68,030.15), plus accrued interest at the maximum legal rate from June 4, 2009, and immediately execute on and enforce said Stipulated Judgment by any procedures allowable by law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:06-cv-06059-CAS (CWx) | Date | March 9, 2017 |
|---|---|---|---|
| Title | SUBLIME ET AL. V. SUBLIME REMEMBERED ET AL. | | |

Id. (quoting Settlement Agreement § 5).  The Court determined that the most reasonable interpretation of the settlement agreement would be to require a "material violation" before permitting plaintiffs to file a stipulated judgment and that, at that time, defendants had not committed a material violation of the injunction.  Id.

On August 4, 2016, plaintiffs filed a second application for an order to show cause why Houlihan should not be found in contempt of the Injunction based on alleged acts by Houlihan since the Prior Contempt Finding.  Dkt. 151.  In this second contempt application, plaintiffs seek $29,120.00 in attorneys' fees and to file the aforementioned stipulated judgment.  Id.  Plaintiffs appear to have personally served Houlihan with the instant application on August 30, 2016.  Dkt. 159.  On September 12, 2016, plaintiffs filed a stipulation providing that, in light of the service date, "[Mike] Houlihan has requested and Plaintiffs have agreed to continue the hearing on Plaintiffs' Application until October 17, 2016."  Dkt. 161.  On September 15, 2016, in light of the stipulation, the Court continued the hearing on plaintiff's application to October 24, 2016.  Dkt. 163.

On October 18, 2016, the Court determined that plaintiffs' application for an order to show cause was appropriate for decision without oral argument, vacated the October 24th hearing, and ordered Houlihan to show cause why he should not be found in Contempt of the Injunction.  Dkt. 167.  The Court ordered Houlihan to file a response to its order no later than November 7, 2016, and scheduled the matter for a hearing on November 28, 2016.[3]  Id.

On November 10, 2016, Houlihan filed a declaration in response to the Court's order.  Dkt. 175 ("Houlihan Decl.").  Not all of the declaration is legible because of what appears to be an error in copying the final page before the declaration was sent to the Court or the plaintiffs.[4]  On November 14, 2016, plaintiffs filed a reply in support of their application for a finding of contempt.  Dkt. 172.

---

[3] The Court further ordered Houlihan, who's address with the Court appeared to be outdated, to provide an updated address for receipt of service by mail.  Id.

[4] The Court has attempted to read the unclear portion of Houlihan's declaration and can discern that he generally denies performing Sublime songs.  Houlihan also appears to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:06-cv-06059-CAS (CWx) | Date | March 9, 2017 |
|---|---|---|---|
| Title | SUBLIME ET AL. V. SUBLIME REMEMBERED ET AL. | | |

On November 28, 2016, the Court held a show cause hearing based upon its October 18, 2016 order. Plaintiffs' counsel was present, brought and lodged additional evidence in support of their application, see Dkt. 177-79, and was prepared offer live testimony in support of the application for a finding of contempt. Defendant was not present, nor was any representative on his behalf. Plaintiffs' counsel indicated that it had received a voicemail from Houlihan stating that he would not be able to attend. The Court checked its own voicemail and found no indication that Houlihan had notified the Court that he would not attend the hearing. Thereafter, the Court indicated its tentative intent to grant plaintiffs' application and find Houlihan in contempt of the permanent injunction based on his failure to rebut the evidence submitted in support of plaintiffs' application.

It appears that, at or around 11:48pm on November 27, 2016, an inquiry was submitted through the Court's public website to the CM/ECF Helpdesk purporting to be from Michael Houlihan and stating:

> We are in colander to be in court at 10 an [sic] Monday morning. Our vehicle broke down after hours of thanksgiving traffic heading to California. We are suppose to be in courtroom 5 with judge Snyder, I am requesting to do the hearing by phone if that's possible. Case is sublime vs sublime remembered/Houlihan case no. CV 06-06059 CAS CWX. I also would like a fax or email so i can send my response to judge snyder.

The message was subsequently forwarded by the CM/ECF Helpdesk to the Courtroom Deputy Clerk, but the Court was unaware of the message prior to the hearing.

On November 30, 2016, the Court ordered Houlihan to file any further opposition to the application for a contempt finding by December 12, 2016. Dkt. 184. To date,

argue that even if he did play several Sublime songs, three of those songs ("Smoke Two Joints," Summertime," and "We're Only Gonna Die for Our Own Arrogance") were, according to Houlihan, written by other performers unrelated to Sublime. Houlihan Decl. ¶ 11. Other than his general denial of the accusations and his argument relating to those three songs, Houlihan states that he "has a viable defense to plaintiff's accusations and that defense will be presented on or before the hearing on the matter." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:06-cv-06059-CAS (CWx) | Date | March 9, 2017 |
| Title | SUBLIME ET AL. V. SUBLIME REMEMBERED ET AL. | | |

Houlihan has filed no further opposition or response to the above-captioned application and order.[5]

Having carefully considered the parties' arguments and the evidence, the Court finds and concludes as follows.

## II.   LEGAL STANDARD

"Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." In re Dual-Deck Video Cassette Recorder Antitrust Litigation, 10 F.3d 693, 695 (9th Cir. 1993). To find a party in civil contempt for violating a court order, the moving party must establish: "(1) that [defendant] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order." Id. The defendant's conduct "need not be willful" to violate a consent judgment. Id. Additionally, the moving party must carry its burden of establishing a violation of the order by clear and convincing evidence; a preponderance of the evidence is insufficient. Id.

## III.   DISCUSSION

Plaintiffs have demonstrated by clear and convincing evidence that Houlihan has violated the Injunction.

---

[5] In December 2016, it appears that some, though not all, mail from the Court to Houlihan has been returned from the address Houlihan maintains with the Clerk of Court in regard to this action. See Dkt. 185-86. The electronic docket indicates that the Court's November 30, 2016 order was delivered by First Class U.S. Mail to the address in Placerville, California, which Houlihan has listed with for service in this matter. At present, Houlihan's address appears to have been updated in the electronic docket to be consistent with the Las Vegas, Nevada address Houlihan offered in his November 10, 2016 declaration.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         'O'

| Case No. | 2:06-cv-06059-CAS (CWx) | Date | March 9, 2017 |
|---|---|---|---|
| Title | SUBLIME ET AL. V. SUBLIME REMEMBERED ET AL. | | |

    **A.**    **Evidence Offered By Plaintiffs**

    Plaintiffs offer evidence that Houlihan is the sole proprietor of a business in Nevada called "Las Vegas Hempfest." Dkt. 151-6, Declaration of Jugpreet Mann ("Mann Decl.") Ex. B. In June 2016, Mann observed on its website that Las Vegas Hempfest intended to put on a concert on June 4, 2016. Listed online among Las Vegas Hempfest's performers was a group called "Sublime LBC."

    On June 3, 2016, Mann emailed Las Vegas Hempfest regarding plaintiffs' concern that a concert by Sublime LBC, and Houlihan's role therein, would violate the Injunction. Mann Decl. ¶ 7; Ex. C. Mann then engaged in an email exchange, all on the same day, with an unidentified person using the lasvegashempfest@gmail.com email address. In reply to Mann's initial email, the unidentified person stated only, "What is the problem with LBC playing. Qball not in it [sic]," evidently referring to Houlihan by the name, Q-ball, under which he performs. Id. Ex. D. Mann responded with a second letter setting forth plaintiffs' concern that Sublime's intellectual property not be violated by Sublime LBC and that Houlihan may be in violation of the Injunction as the sole proprietor of Las Vegas Hempfest. Id. Ex. E. The unidentified person replied a second time by stating, "[w]e told you Mike Houlihan does not play in this band. You seem to want to take this further, [sic] We don't care about a sublime tribute band so we will take them off the show. They will not be performing at Hemp Fest. Thank you." Id. Ex. F.

    On June 4, 2016, the Las Vegas Hempfest concert occurred and Mann attended. Id. ¶ 11. At 8:37 p.m. on June 4, 2016, Sublime LBC began performing. Id. Houlihan joined them onstage and performed "for the majority of the performance." Id. Mann observed Sublime LBC perform numerous Sublime songs, including "Smoke Two Joints," "Don't Push," "April 26, 1992," "Santeria," "Bad Fish," "Doin' Time," "STP," and "What I Got." Id.; Dkt. 177, Supplemental Declaration by Jugpreet Mann ("Supp. Mann Decl.") Ex. F. Mann recorded the performance and took numerous photographs of Houlihan onstage, which plaintiffs have also offered in support of their application. Mann. Decl. Ex. G, H; Supp. Mann Decl. Ex. E, F, J, M. In the video submitted by Mann, Houlihan can be clearly observed playing the songs "Smoke Two Joints," "Doin Time," "Don't Push," and "April 26, 1992." Supp. Mann Decl. Ex. E, F, J, M.

    After the concert, Mann visited the Las Vegas Hempfest website and followed web links to a Facebook page and Twitter page for Las Vegas Hempfest, both of which were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:06-cv-06059-CAS (CWx) | Date | March 9, 2017 |
|---|---|---|---|
| Title | SUBLIME ET AL. V. SUBLIME REMEMBERED ET AL. | | |

advertising the Sublime LBC performance. Mann Decl. ¶ 12, Ex. I, J. The Las Vegas Hempfest Facebook page appears to advertise "a celebrity all star jam featuring original members from Sublime," at the June 4, 2016 concert. Mann. Decl. Ex. I.

Mann also claims that Houlihan performed on or about October 3, 2015, at a previous Las Vegas Hempfest. Plaintiffs offer images of Houlihan from videos posted on Youtube.com purporting to be videos from the Las Vegas Hempfest concert in October 2015. Mann Decl. Ex. K, L, M, N, O. Plaintiffs also offer images from videos on Youtube.com purporting to be from a concert in May 2013. Id. Ex. P, Q, R.

Mann has found other websites wherein Houlihan appears to be affiliated with a different Sublime cover band called Longbeach Rehab or the original band Sublime. Plaintiffs offer screenshots of a Long Beach Rehab Facebook page, which lists "Mike Houlihan" as the "Page Owner." Id. Ex. S, T. The Long Beach Rehab Twitter page, which is hyperlinked to the Long Beach Rehab Facebook page, states that the group is a "Dubstep/HipHop/Reggae band featuring original members of Sublime." Id. Ex. T. Plaintiffs also offer a screenshot of www.qballsublime.com, wherein someone has written that Houlihan is a former member of Sublime. Id. Ex. V, W. A portion of www.qballsublime.com states that "[t]here are no law suits [sic] discrediting Q-ball from his affiliation to Sublime. And never can be because Q-ball is the real deal." Id. Ex. V. Mann located a "Whois record" stating that qballsublime.com is registered in the name of Jordan Houlihan, Houlihan's daughter.

**B.  Houlihan's Actions in Violation of the Injunction**

In the Prior Contempt Finding, the Court noted that activities that have only a "tenuous relationship" to Sublime, such as listening to a concert wherein Sublime music is performed, does not violate the Injunction. Nonetheless, the admissible evidence offered by plaintiffs is sufficiently clear and convincing to find Houlihan in contempt of the Injunction. Plaintiffs have not offered adequate foundation for consideration of certain pieces of evidence.[6] However, the admissible evidence compellingly demonstrates that Houlihan has violated several clear provisions of the Injunction.

---

[6] For instance, Mann does not appear to have adequate personal knowledge to lay foundation for the admission of videos from YouTube.com or to explain the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:06-cv-06059-CAS (CWx) | Date | March 9, 2017 |
|---|---|---|---|
| Title | SUBLIME ET AL. V. SUBLIME REMEMBERED ET AL. | | |

### 1. Promotion and Marketing

Houlihan, as sole proprietor of Las Vegas Hempfest, has violated section 1.A of the Injunction, which prohibits him from selling, advertising, and promoting goods and services related to Sublime "specifically including, but with out limitation [sic], any and all activities related to a Sublime tribute band or Sublime cover band." Specifically, Houlihan has at least advertised and promoted the Sublime cover band Sublime LBC and its performance at Las Vegas Hempfest in June 2016. The Las Vegas Hempfest website, Facebook page, and Twitter account all included advertisements for Sublime LBC's performance. Furthermore, Houlihan personally promoted Sublime LBC's performance by joining them onstage and performing alongside them during Las Vegas Hempfest.

### 2. Performing

Section 1.B of the Injunction expressly precludes Houlihan from performing music that was "written in whole or in part by Sublime, Bradley Nowell, Floyd 'Bud' Gaugh IV or Eric Wilson." The videos offered by plaintiffs clearly and convincingly establish that Houlihan performed onstage with Sublime LBC on June 4, 2016. Specifically, Houlihan can be seen in the videos taken by Mann playing "Smoke Two Joints," "Doin Time," "Don't Push," and "April 26, 1992." Houlihan does not dispute that he played these songs with a Sublime cover band.

---

circumstances for their creation. In the Prior Contempt Finding, the Court expressly rejected this type of evidence because the plaintiffs had not adequately laid foundation for its admission and therefore had not demonstrated particular performances by clear and convincing evidence. See Prior Contempt Order at 5-6 ("Plaintiffs have failed to offer any evidence authenticating the youtube.com videos purportedly depicting post-injunction performances").

Similarly, although the content of qballsublime.com and its apparent registration by Houlihan's daughter suggest Houlihan may have been aware of the website's existence, it is unclear that Houlihan has played any role in writing or authorizing the content available at qballsublime.com.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:06-cv-06059-CAS (CWx) | Date | March 9, 2017 |
|---|---|---|---|
| Title | SUBLIME ET AL. V. SUBLIME REMEMBERED ET AL. | | |

Houlihan appears to argue that "Summertime"/ "Doin time"[7] was composed by George Gershwin and that "Smoke Two Joints" was written by the band The Toyes. Houlihan Decl. ¶ 11. Plaintiffs respond by arguing that Houlihan did not perform the George Gershwin song, "Summertime," which was written for the opera in 1934, but rather the Sublime song "Doin' Time," written by Bradley Nowell of Sublime in 1996. Id. Plaintiffs have offered into evidence the copyright registry for the song "Doin' Time," Supp. Mann Decl. ¶ 4, Ex. A, which demonstrates that the song was written, at least in part, by Nowell.[8] The Injunction applies to songs written "in whole *or in part*" by Sublime, Nowell, Gaugh, or Wilson. See Injunction section 1.B (emphasis added). Having listened to Houlihan's performance of "Doin' Time," the Court has little trouble concluding that Houlihan was not performing the classic George Gershwin aria at Las Vegas Hempfest on June 4, 2016. Instead, Houlihan and Sublime LBC performed the song "Doin' Time," which was partially written by Nowell.

Regarding the song "Smoke Two Joints," it appears to have been similarly registered with the Copyright office in Sublime's name. See Supp. Mann Decl. ¶ 7, Ex. D. Plaintiffs acknowledge that The Toyes wrote a song by the same name in 1982 and that the Sublime song shares most of its lyrics with the Toyes' song. Plaintiffs contend that the two songs are in distinct genres, have different musical accompaniment, and that the Sublime LBC singer sang lyrics which only appear in Sublime's version. This song presents a closer question than Houlihan's argument about the George Gershwin song "Summertime." However, in June 2016, at Las Vegas Hempfest, Sublime LBC appears to have performed lyrics written by Sublime for its version of "Smoke Two Joints." Compare Supp. Mann Decl. Ex. M at 2:43 (wherein the Sublime LBC singer says "Smoke cigarettes 'til the day she dies") with Mann Decl. ¶ 14 & Ex. L (showing those to

---

[7] Houlihan refers to a song by the title "Summertime." Mann's original declaration also refers to a Sublime song by the name "Summertime." According to Mann, the name in his original declaration was an error and Houlihan actually played a Sublime song entitled "Doin' Time." According to Mann, the Sublime song "Doin' Time" is often mistakenly called "Summertime," although its true name is "Doin' Time." Supp. Mann Decl. ¶ 13.

[8] The copyright acknowledges that the song "Doin' Time" includes a sample from the Gershwin song, see Supp. Mann Decl. Ex. A, but Houlihan does not explain why that should place the entire song outside the meaning of the Injunction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               'O'

| Case No. | 2:06-cv-06059-CAS (CWx) | Date | March 9, 2017 |
|---|---|---|---|
| Title | SUBLIME ET AL. V. SUBLIME REMEMBERED ET AL. | | |

be lyrics in the Sublime version of "Smoke Two Joints"). Therefore, setting aside the musical differences between the two songs, Houlihan appears to have performed a song written, in part, by Sublime.

Even if the Court were to disregard Houlihan's performance of the songs "Doin' Time" and "Smoke Two Joints," Houlihan offers no explanation of his performance of "Don't Push" and "April 26, 1992." Additionally, Houlihan offers no explanation of his promotion of the band Sublime LBC. Section 1.B of the Injunction prohibits Houlihan, as well as his "agents, representatives, and persons acting" on his behalf, from "encouraging or authorizing" others to perform music written by Sublime. Sublime LBC, a Sublime cover band, plainly performs music written in whole or in part by Sublime. When Sublime LBC's singer introduced Houlihan at Las Vegas Hempfest in June 2016, he told the crowd "Give it up for Q-Ball, the only reason we're all here right now, making dreams come true at Hempfest." Supp. Mann Decl. Ex. M at 1:10.

Houlihan's only response to the foregoing is that he "has a viable defense" that "will be presented on or before the hearing" on this matter. Houlihan Decl. ¶ 11. Houlihan's failure to appear for the hearing or to otherwise file any opposition other than his brief declaration does not provide a basis for denying plaintiffs' application. Houlihan appears to have played music written by Sublime and to have encouraged and authorized Sublime LBC to do the same. Both actions violate section 1.B of the Injunction.

### 3. Promoting Performances

Section 1.E of the Injunction precludes Houlihan from "promoting, marketing, advertising . . . or booking any music group or artist that performs music compositions written" by Sublime. By promoting and playing alongside the band Sublime LBC, Houlihan has violated this section of the Injunction for the reasons discussed above.

### 4. Disseminating Statements About Sublime

Section 1.F of the Injunction precludes Houlihan from authoring, publishing, and disseminating statements that "mention, concern or relate" to Sublime. It further precludes Houlihan from "encouraging or authorizing the same."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:06-cv-06059-CAS (CWx) | Date | March 9, 2017 |
|---|---|---|---|
| Title | SUBLIME ET AL. V. SUBLIME REMEMBERED ET AL. | | |

     Based upon the existing record, plaintiffs have not clearly and convincingly demonstrated Houlihan's role in qballsublime.com or any of the social media accounts related to the band Long Beach Rehab. The former may well be registered in Houlihan's daughter's name, but that does not establish that Houlihan has played a role in its creation or maintenance. Similarly, the only connection between the Long Beach Rehab social media accounts and Houlihan is that the Long Beach Rehab Facebook page states that its owner is a "Mike Houlihan" Facebook account. See Ex. S. Plaintiffs offer no evidence demonstrating that the Mike Houlihan Facebook page at issue is within defendant's control, nor does Mann purport to have personal knowledge of that fact. Plaintiffs argue that Houlihan maintains the Sublime LBC and Long Beach Rehab Facebook pages, but the Court rejected a similar argument about these same accounts in its Prior Contempt Finding. As the Court previously held, the existence of these social media accounts does not demonstrate a violation of the Injunction without additional foundation. See Prior Contempt Finding at 7.

     However, insofar as Las Vegas Hempfest appears to have publicized and disseminated statements about Sublime LBC and to have specifically marketed a performance at Las Vegas Hempfest by "original members of Sublime," Mann Decl. Ex. I, Houlihan has violated section 1.F of the Injunction. Houlihan is the sole proprietor of the Las Vegas Hempfest concert and appears to have, at least, authorized the company's agents to make marketing statements related to Sublime. Sublime features prominently in the Las Vegas Hempfest materials offered by plaintiffs. These activities violate section 1.F of the Injunction.

     In accordance with the foregoing, the Court finds Houlihan in contempt of the Injunction.

     **C.**     **Remedies**

     The remaining issue is what remedy should be ordered due to the violation of the Injunction. Plaintiffs seek attorneys' fees in the amount of $29,120 and to file a Stipulated Judgment. "Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986). Coercive fines, or any portion thereof, are payable to the Court rather than to the opposing party. Id. When imposing a coercive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:06-cv-06059-CAS (CWx) | Date | March 9, 2017 |
|---|---|---|---|
| Title | SUBLIME ET AL. V. SUBLIME REMEMBERED ET AL. | | |

civil contempt sanction, a court should consider: (1) the character and magnitude of the harm from continued noncompliance; (2) the probable effectiveness of any sanctions in achieving future compliance; (3) the amount of defendant's financial resources; and (4) the willfulness of the violating party.  See U.S. v. United Mine Workers of America, 330 U.S. 258, 303–304 (1946); General Signal Corp., 787 F.2d at 1380.  The amount of a compensatory fine, on the other hand, should be based upon the movant's actual losses suffered as a result of the violation.  Id.; see also Shuffler v. Heritage Bank, 720 F.2d 1141, 1148 (9th Cir. 1983).

      In the Court's Prior Contempt Finding, the Court noted that defendant appeared to have begun a concert not knowing that Sublime's music would be performed, but had nonetheless played the Sublime song "Santeria."  Houlihan's performance of "Santeria" was the only violation of the Injunction and the Court ordered a fine of only $500.  The Court explained its decision to order a small fine by noting that Houlihan's performance was a single isolated violation of the Injunction, which defendant appeared to have done unexpectedly and without having made significant profit.  Dkt. 149.  Houlihan has offered no such explanation of his conduct here.

      In contrast to the Court's prior order, Houlihan's efforts promoting the Las Vegas Hempfest and his performance alongside Sublime LBC at the Las Vegas Hempfest appear to have been willful and planned.  Houlihan organized a large-scale concert, of which he was the sole proprietor and at which he played several Sublime songs with a Sublime cover band.  The scale of the concert and the prominence of Sublime LBC in the concert's marketing demonstrate that Houlihan intended to promote a Sublime cover band and intended to play alongside them.  Based on the evidence offered by plaintiffs, it appears that the Court's prior contempt order was insufficient to deter further violations of the Injunction.  In light of Houlihan's conduct, a larger sanction appears to be appropriate.

      In light of the character and magnitude of Houlihan's violations of the Injunction and the necessity of deterring Houlihan's conduct in violation of the Injunction, the Court finds it appropriate to award plaintiffs' proposed compensatory fine in the amount of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:06-cv-06059-CAS (CWx) | Date | March 9, 2017 |
|---|---|---|---|
| Title | SUBLIME ET AL. V. SUBLIME REMEMBERED ET AL. | | |

their reasonable attorneys' fees. Therefore, Houlihan is ordered to pay $26,446 to plaintiffs as a sanction for the violations of the Injunction identified herein.[9]

Additionally, Houlihan's violation of the Injunction appears to be a material violation such that plaintiffs are entitled to file a stipulated judgment. The parties executed their settlement agreement after plaintiffs secured a judgment against defendant in the amount of $64,900 and an order to tax costs against defendant in the amount of $3,130.15. Dkt. 99, 102. In the parties' settlement agreement, plaintiffs agreed to acknowledge satisfaction of this judgment in exchange for defendant's agreement to comply with the terms of the Injunction. Dkt. 141. Accordingly, the essence of the parties' settlement agreement is that plaintiffs would not collect their judgment as long as Houlihan would abide by the terms of the Injunction.

In the Court's Prior Contempt Finding, the Court noted:

---

[9] Although plaintiffs request $29,120 in attorneys' fees, $2,535 of that amount was an estimate of fees plaintiffs might have incurred filing a reply and presenting evidence at a hearing on this matter. Because Houlihan filed only a cursory opposition in the form of his own declaration and because Houlihan failed to appear for the hearing on this matter, the Court finds it inappropriate to award plaintiffs the $2,535 that they anticipated incurring as additional attorneys' fees after they filed their application for an order to show cause.

Regarding attorneys' fees actually expended, plaintiffs have offered evidence demonstrating a reasonable lodestar for the attorneys who have worked on plaintiffs' application here. See Mann Decl. ¶¶ 20-25. Plaintiffs have demonstrated that their attorneys expended 85 hours investigating and preparing the application for an order to show cause. The attorneys' hourly rates, ranging from $245 to $475, appear to have been reasonable in light of their experience and work on this matter. Having closely reviewed plaintiffs' submission, the Court estimates plaintiffs' attorneys' fees to have been $26,446 in relation to the investigation of Houlihan's conduct and the application here. Plaintiffs' appear to have calculated the amount as $26,585, but the discrepancy of $139 appears to have been a miscalculation by plaintiffs.

For his part, Houlihan has offered no argument against plaintiffs' evidence and calculation of attorneys' fees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL  'O'

| Case No. | 2:06-cv-06059-CAS (CWx) | Date | March 9, 2017 |
|---|---|---|---|
| Title | SUBLIME ET AL. V. SUBLIME REMEMBERED ET AL. | | |

that plaintiffs [were] not entitled to file the stipulated judgment referenced in section 5 of the parties' settlement agreement. If, however, additional violations of the injunction occur, plaintiffs may be entitled to avail themselves of that remedy if all of defendant's conduct, in the totality of the circumstances, amounts to a material violation of the injunction.

Prior Contempt Finding at 11. Houlihan has chosen not to abide by the terms of the Injunction. Instead, he has continued to violate the Injunction to which he stipulated at the time of the settlement agreement. Insofar as Houlihan appears to have willfully violated several express and clear terms of the Injunction, plaintiffs do not appear to have obtained substantial compliance with the settlement agreement. The totality of the circumstances surrounding Houlihan's conduct now demonstrates a material violation of the Injunction. Therefore, plaintiffs may file the stipulated judgment referenced in section 5 of their settlement agreement with Houlihan.

## IV. CONCLUSION

For the reasons discussed herein, the Court finds Houlihan in contempt of the Injunction. As a sanction, Houlihan is ordered to pay the sum of $26,446 to plaintiffs by April 10, 2017. Furthermore, plaintiffs will be permitted to file the stipulated judgment discussed herein.

IT IS SO ORDERED.

|  | 00 | 00 |
|---|---|---|
| Initials of Preparer | | CMJ |